IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JEFFREY D. WESTBROOK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. |
| | ) | 1:15-CV-067-BL |
| LORIE DAVIS, Director, | ) | |
| Texas Department of Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
| | ) | |
| Respondent. | ) | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

This case was reassigned to the United States Magistrate Judge after the Petitioner initially filed a consent to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). As all parties have not consented to so proceed, the undersigned magistrate judge issues this report and recommendation pursuant to 28 U.S.C. § 636(b) and a standing order of reference. Afer review and consideration of the § 2254 petition and the applicable law, the district judge should deny the petition on the merits.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner Jeffrey D. Westbrook initially filed two separate form Petitions for Relief Under 28 U.S.C. § 2254 in a prior then-pending action number 1:13-CV-004-C, and pursuant to an order entered in that case, those petitions were subsequently separately opened as separate cases: *Westbrook v. Davis,* Nos. 1:15-CV-066-BL and 1:15-CV-067-BL. Westbrook, an inmate currently incarcerated in the Texas Department of Criminal Justice, filed the separate petitions to challenge disciplinary proceedings. (Petition, doc, 1, at 5-6.) After service upon the respondent, and in response to a Court order, the respondent filed an answer to Petitioner's § 2254 petition (doc. 15),

along with copies of the state court records of the grievance and hearing records related to the disciplinary case challenged in this proceeding. (Docs. 16-1, 16-2.)

Petitioner then filed a document entitled "reply", beyond the deadline but with the Court's permission (docs. 21-22). Petitioner then filed a "supplemental reply" (doc. 23), without seeking the Court's permission. The Court then granted Petitioner's motion to provide copies, and directed the Respondent to provide to Petitioner a copy of the state court record papers filed in this case, which the Respondent informed the Court took place. (Docs. 24, 26, and 27.) Petitioner then sought, and the court has granted, a motion to file a second supplemental reply. As a result, in addition to the § 2254 petition and response, the Court will review and consider Petitioner's reply (doc. 22), supplemental reply (doc. 24), and second supplemental reply (doc. 30).

Petitioner Westbrook is currently in TDCJ-CID custody pursuant to a judgment and sentence of the 2nd Judicial District Court of Cherokee County, Texas, in cause number 11357, styled *The State of Texas v. Jeffrey D. Westbrook.* (Response, Exhibit A (doc. 15-1), at 2.) Westbrook pled guilty to the felony offense of burglary of a habitation, and he was sentenced to forty years' imprisonment. *Id.* A procedural history of any appeals or state habeas corpus applications with regard to Westbrook's holding conviction is unnecessary for the resolution of the instant petition because Westbrook does not directly challenge his conviction.(Pet. (doc. 1) at 2, 5-7.)

Rather, in this case, *Westbrook v. Davis,* No. 1:15-CV-067-BL, Westbrook challenges prison disciplinary case number 20120219132. (Doc. 1, at 5.) In that disciplinary proceeding, Westbrook was found guilty, on April 18, 2012, of violating a TDCJ-CID Level 1, Code 4.0 rule for threatening to inflict harm on a TDCJ-CID investigator. (Disciplinary Report, Preliminary Investigation Report,

2

and Offense Report (Doc. 16-1, at 3-5, 10-11.)[1] Westbrook was also found guilty of using indecent or vulgar language in the presence of or directed at an employee or any person who is not an offender, a Level 3, Code 42.0 violation of the TDCJ-CID Disciplinary Rules. *Id.*[2]

More specifically, Westbrook was charged because he "threatened to inflict harm on Investigator B. Young in that said offender wrote a grievance stating 'you will personally pay for this old whore's relentless retaliation and illegal acts." (Doc. 16-1, at 3.) The report also charged that within the same grievance, Westbrook wrote "'cocksucking old cunt, cunt UGI Young, cunt Young and Adcoxsucker' in the presence of the written charging officer." *Id.* Westbrook's punishment for these rule violations was assessed at: (1) a loss of 364 days good-time credit, (2) fifteen days suspension of recreation privileges, and (3) thirty day suspension of commissary privileges. *Id.*

On April 25, 2012, Westbrook filed a step one grievance form, initiating grievance case number 2012148469, and in which he appealed the hearing officer's finding of guilt and punishment determination in disciplinary case number 20120212729. (Doc. 16-2, at 5-6.) On May 18, 2012, his step one grievance was denied. *Id.* at 5. On May 23, 2012, Westbrook filed a step two grievance, again challenging disciplinary case number 20120219132. *Id.* at 3-4. Westbrook's step two grievance was denied on July 11, 2012. *Id.* at 4.

Westbrook filed the instant § 2254 petition, seeking reversal of the disciplinary conviction and restoration of the good time. (Doc. 1, at 7.)

---

[1] See TDCJ-CID, Disciplinary Rules and Procedures for Offenders, Attachment B (last visited Dec. 13, 2016), http://www.tdcj.state.tx.us/documents/cid/Disciplinary_Rules_and_Procedures _for_Offenders_English.pdf> pages 32-33.

[2] See TDCJ-CID, Disciplinary Rules and Procedures for Offenders, Attachment B (last visited Dec. 13, 2016), http://www.tdcj.state.tx.us/documents/cid/Disciplinary_Rules_and_Procedures _for_Offenders_English.pdf> pages 40, 42.

## II.    ISSUES

Petitioner raises the following grounds for relief:

    1. There was insufficient evidence to support the guilty finding because:

        (A) He did not threaten Young and did not include a threat in a grievance;

        (B) Use of the term "Adcoxsucker" was a quote from a previous disciplinary case;

        (C) He actually was threatening to hold Warden Wheeler liable for Young's acts;

    2. The disciplinary case was written in retaliation; and

    3. Petitioner was not allowed to attend the disciplinary hearing.

(Doc. 1, at 6–7.)

## III.    NO VIOLATION OF DUE PROCESS OF LAW[3]

### A.    Loss of Commissary and Recreation Privileges

As a result of challenged disciplinary case number 20120219132, Westbrook was assessed the punishment of 30 days' loss of commissary privileges, and 15 days' loss of recreation privileges. (Doc. 16-1, at 3.) "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachaum v. Fano*, 427 U.S. 215, 222 (1976)). When a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Id.* at 485; *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974); *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). Although prisoners do not lose all constitutional rights, the liberty interests that states may create by

---

[3] In this case, the Respondent conceded that Westbrook exhausted his state court remedies on the claims presented though the two-step grievance process for appealing disciplinary proceedings. (Doc. 15, at 4 (citing 16-2, at 3-6.))

regulations or statue are generally limited to freedom from restraint in the quantity of time rather than quality of time served by the prisoner. *Sandin*, 515 U.S. at 483-84; *Madison*, 104 F.3d at 767. "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted).

To the extent Westbrook challenges his loss of commissary and recreation privileges, such punishments do not pose an "atypical" or "significant hardship" beyond "the ordinary incidents of prison life." *Id.* Rather, such restrictions constitute only a change in the conditions of Westbrook's confinement, and therefore do not implicate the protections afforded by the Due Process Clause. *See id.* at 486 (holding that no liberty interest was implicated by placement in segregated confinement); *Madison*, 104 F.3d at 768 (holding that thirty days of commissary and cell restrictions do not implicate due process concerns).

Thus, with respect to his loss of commissary and recreation privileges, Westbrook has failed to state a claim that entitles him to federal habeas corpus relief.

**B.     Process Afforded Before Loss of Good Time Credit**

As a result of disciplinary case number 20120219132, Westbrook was deprived of 364 days of good time. (Doc. 16-1, at 3.) Under Texas law, good-time credits do not actually reduce an inmate's sentence. Rather, since 1977, good time credits affect the amount of a given sentence that an eligible inmate will have to serve before being released on parole or mandatory supervision. *See* Tex. Civ. Stat. art. 6181-1 § 4 (Vernon 1977) (good time credits "appl[y] only to eligibility for parole or mandatory supervision"), currently Tex. Gov't. Code Ann. § 498.003(a) (West 2012); *see also*

5

Tex Code Crim. Pro. art. 42.18 § 8(c) (West 1992) (eligibility for release to mandatory supervision), currently Tex. Gov't Code Ann § 508.147(a) (West 2012). A Texas prisoner does not possess a liberty interest in being released on parole. *Allison v. Kyle*, 66 F.3d 71, 73-74 (5th Cir. 1995) (citations omitted). Thus, to the extent that Westbrook contends that his parole eligibility has been adversely affected by the challenged disciplinary infraction, this does not state a basis for relief. *Sandin*, 515 U.S. at 487.

The Supreme Court has recognized, however, that states may, in some instances, create liberty interests that are protected by the Due Process Clause through the language of prison regulations. *Sandin*, 515 U.S. at 483-84. In Texas, only sanctions that result in the loss of good-time credits for inmates who are eligible for release on mandatory supervision create a protected liberty interest in early release from prison. *See Teague v. Quarterman*, 482 F.3d 769, 776–77 (5th Cir. 2007); *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000) (holding that inmates that are eligible for release on mandatory supervision have a protected liberty interest in the loss of good-time credits). Thus, in cases where a Texas inmate is eligible for release on mandatory supervision, a challenge to a loss of good-time credit must be reviewed under the standards for satisfying due process are set out in *Wolff v. McDonnell*. 418 U.S. at 556 (1974). As the Respondent notes that Westbrook is eligible for release on mandatory supervision, the *Wolff* due process procedures must be examined with regard to disciplinary case number 20120219132, because 364 days of good-time credit was taken away from Westbrook. *See Malchi*, 211 F.3d at 958-59; *see also* Doc. 15-1, at 2-3 ("MS-Y indicates Westbrook is eligible for mandatory supervised release with regard to his conviction in cause number 11357"); Tex. Code Crim. Pro. Art. 42.18 § 8(c) (Vernon 1990).

In general, prison disciplinary proceedings do not form part of a criminal prosecution, and,

6

therefore, "the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Due process requires that a prison inmate be provided with: (1) advanced written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action; and (4) a counsel substitute when the inmate is illiterate or when the case appears complex, thus requiring the inmate to be aided in the presentation of evidence. *Id.* at 563-567.

To the extent Westbrook claims that his due process rights were violated, his claim must fail. First, Westbrook was notified of the disciplinary charges on April 12, 2012 at 9:31 a.m., and the hearing was held on April 18, 2012 at 3:12 p.m.. (Doc. 16-1, at 3, 5, and 8); *see Wolff*, 418 U.S. at 563. Thus, Westbrook received time in excess of the twenty-four hour advanced written notice of the charges required under *Wolff*, thus enabling him to "marshal the facts and prepare a defense." (Doc. 16-1, at 3, 5, and 8) ; *see Wolff*, 418 U.S. at 564. Second, Westbrook was informed of his right to call witnesses and present documentary evidence. (Doc. 16-1, at 8 (indicates that counsel substitute informed Westbrook of his right to call and question witnesses and of his right to present documentary evidence on April 12, 2012); *see Wolff*, 418 U.S. at 566-69. At the time of service, Westbrook did not request any documentary evidence. (Doc. 16-1, at 8.) The record indicates that Westbrook did request witnesses at the time of service. *Id.* The record further indicates that counsel substitute obtained written witness statements from Warden Wheeler and Officer Young. *Id.* at 6-8. Finally, the record reflects that the two witness statements were presented during the disciplinary hearing. *Id.* at 5.

Moreover, Westbrook was provided with a final report of the disciplinary hearing stating the

evidence relied upon and the reason for the disciplinary action. (Doc. 16-1, at 16); *see Wolff*, 418 U.S. at 564-66. In light of the foregoing, Westbrook's claim that he was denied due process must be dismissed with prejudice because he was provided with the process as mandated by *Wolff*.

C. **Evidence in Support of Hearing Officer's Findings**

Westbrook claims that "I literally and factually did not 'threaten' Young, in a letter to Senior Warden Wheeler." (Doc. 1, at 6.) He also contends that the use of the term "Adcoxsucker" was a direct quote from a previous disciplinary case, and should not have been the basis for another case. *Id.* Moreover, Westbrook contends that "[a] 'threat' to hold Warden Wheeler personally liable for Young's illegal acts . . . is not a threat under Texas law." *Id.* at 7. The court construes these claims together as a challenge to the sufficiency of the evidence by which Westbrook was found guilty. But Westbrook's claims are incorrect and must be denied.

The Fifth Circuit has held that the findings of a "prison disciplinary hearing will not be disturbed unless they are arbitrary and capricious." *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Due to the needs of prison security and protection, even "anonymous and merely generalized accusations [can] form the sole basis for disciplinary action against a prison inmate." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. Unit A 1981). The court's role on review is not to assess the weight of the evidence. *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001) (citing *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 455, 455-56 (1985)). Rather, reviewing courts are to only "examine if the guilty finding has 'support of some facts' or 'any evidence at all.'" *Hudson*, 242 F.3d at 537 (quoting *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986)). So long as there is "any evidence at all" to support the prison disciplinary hearing officer's findings, the results of the hearing will be upheld. *Hudson*, 242 F.3d at 536 (quoting *Smith*, 659 F.2d

8

at 545); *see also Hill*, 472 U.S. at 456 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.")

The record reflects that Westbrook did submit documents that included the language "Cunt Young," "corrupt, cocksucking old cunt," and "[y]ou will personally pay for this old whore's relentless retaliation." (Doc. 16-1, at 13,14.) Moreover, the charging officer's report stated the following:

> [Westbrook] threatened to inflict harm on Investigator III B. Young in that said Offender wrote a grievance stating you will personally pay for this old whore's relentless retaliation an illegal acts also in the same grievance wrote the following statement: cocksucking old cunt, cunt, UGI Young, cunt Young and Adcoxsucker in the presence of the written grievance to Warden Wheeler . . ." [and]
>
> "On 4-11-12 a grievance was brought to the 12 Bldg Ct's office that Offender Westbrook had wrote that made threatening remarks towards Investigator III B. Young and also used several vulgar and indecent language [sic]."

(Doc. 16-1, at 10.)

The hearing officer stated that he based the guilty finding on the charging officer's report. (Doc. 16-1, at 3,5.) Here, the charging officer's report and the documentary evidence support the guilty finding. (Doc. 16-1, at 3-5, 10); *see generally Hudson*, 242 F.3d at 536-537 ("Officer M. Goolsby's identification of Hudson in her written report clearly constitutes 'some' or 'any' evidence to support the prison disciplinary board's guilty finding."). In his reply and second supplemental reply, Westbrook continues to argue that the threatening remarks about Officer Young were within a document intended for Warden Wheeler and thus could not constitute a threat to Young, and the

9

vulgar language was only restated from prior grievances. (Docs. 21, 29.) But a review of the disciplinary hearing records confirms that there was some evidence to support the hearing officer's finding of guilt at the time of the disciplinary proceeding.

Because Westbrook received all the procedural safeguards to which he was entitled, his claims must challenging whether he was denied due process of law in the loss of good time credit must be denied. *See Banuelos*, 41 F.3d at 234; *Hudson*, 242 F.3d at 536-537.

**D.      Right to Attend Hearing**

Westbrook claims that his due process rights were violated because he was "not allowed to attend the hearing." (Doc. 1, at 7.) But, Westbrook's claim is contradicted by the record. The record establishes that Westbrook waived his right to attend the disciplinary hearing. (Waiver of right to Attend Hearing (doc. 17-1. at 15.) Counsel substitute noted on the waiver form that "[o]n the date and time listed above, I contacted subject offender and asked him/her if he/she wanted to attend his/her disciplinary hearing. The offender replied: No." *Id.*   Although Westbrook disputes the accuracy of these documents in his reply as being "falsified" (doc. 21, at 10-11), Westbrook's claim is refuted by the record.

## IV. NO RETALIATION

The Fifth Circuit has held that prison officials are prohibited from retaliating against inmates who exercise the right of access to the courts, or who complain of prison conditions or about official misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted); *Gibbs*, 779 F.2d at 1046. When a prisoner claims that officials retaliated against him by issuing a false disciplinary report, favorable termination of the underlying disciplinary charge is not a prerequisite for bringing the claim. *Woods,* 60 F.3d at 1164. The concern is whether there was retaliation for the exercise of

a constitutional right, separate and apart from the apparent validity of the underlying disciplinary report. *Id.* at 1164-1165. "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Id.* at 1165 (citations omitted). In addition, proceedings that are not otherwise constitutionally deficient may be invalidated by retaliatory animus. *Id.* (citations omitted).

To prevail on a claim of retaliation, a prisoner must establish the following: (1) the exercise of a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.2d 225, 231 (5th Cir. 1998)). Causation requires a showing that "but for the retaliatory motive, the complained of incident . . . would not have occurred." *Steward*, 132 F.3d at, 231 (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.). The constitutional protections afforded those who seek access to the courts extend only to those who prepare legal work for themselves. "[N]either any frivolous filings nor secondary litigation activity, i.e., legal research and writing that does not involve preparation of lawsuits challenging a writ writer's own conviction(s) or the conditions of his or her confinement, may comprise the basis of a retaliation claim." *Johnson v. Rodriguez*, 110 F.3d at 311.

With regard to reviewing claims of retaliation arising from the context of prison disciplinary charges, the Fifth Circuit has recognized that "[c]laims of retaliation must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods*, 60 F.3d at 1166 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir.1994)). The Fifth Circuit recited the applicable standard of review:

> To assure that prisoners do not inappropriately insulate themselves from disciplinary

11

actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident–such as the filing of disciplinary reports as in the case at bar–would not have occurred. This places a significant burden on the inmate. Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal citations and footnotes omitted).

Finally, conclusory allegations of retaliation will not withstand a summary judgment challenge. *Woods*, 60 F.3d at 1166 (citing *Richardson v. McDonnell*, 841 F.2d 120, 123 (5th Cir. 1988) (upholding summary judgment dismissal of retaliation claim where inmate never offered documentary or testimonial evidence in support of assertions)); *Jones*, 188 F.3d at 326 ("because Jones has alleged no facts sufficient to demonstrate that the appellees have engaged in conduct that will result in a violation of his right of access to the court his retaliation claims fail.").

Westbrook alleges that disciplinary case number 20120219132 "is the essence of retaliation by Young and Adcox." (Doc. 1, at 7.) Even though Westbrook carries the burden of establishing retaliation, he offers no specific facts or documentary evidence to support his blanket allegation of retaliation. *See McDonald*, 132 F.3d at 231 (inmate failed to provide evidence of retaliatory intent). Moreover, in this case, he fails to identify a constitutional right. (Doc. 1, at 7.) Even to the extent he is indirectly complaining of interference with the right to file complaints or grievances against an officer, he fails to identify when the alleged complaints or grievances were filed and the issues presented. (Doc. 1, at at 7); *see Woods*, 60 F.3d at 1166; *Richardson v. McDonnell, et al.*, 841 F.2d at 123. In neglecting to allege fact-specific details, Westbrook has not demonstrated that any of the individuals involved in this particular disciplinary case, were acting in a retaliatory manner.

Although in his reply, Westbrook alleges that Major Anthony Adcox approved and ordered this disciplinary case as a part of a pattern of retaliatory behavior for Westbrook's history of filing grievances, and acknowledges that Young has been the subject of "dozens of his complaints", as a part of his allegation of retaliatory animus against these persons (Doc. 21, at 11-13), Westbrook has failed to demonstrate that these individuals initiated this disciplinary case to retaliate against him. He has failed to his allegation that this particular disciplinary case was written in retaliation. Westbrook's claim of retaliation, standing alone, fails to meet the requisite proof of causation. He has failed to establish that but for the animus of any TDCJ-CID employee, he would not have been charged and found guilty of the prison disciplinary violation at issue. *See McDonald,* 132 F.3d at 231.

Finally, Westbrook's allegation cannot be deemed to provide "a chronology of events from which retaliation may plausibly be inferred." *Woods,* 60 F.3d at 1166. Westbrook's mere use of legal buzzwords in the absence of specific facts or documentary evidence cannot support a claim of retaliation, much less federal habeas corpus relief; consequently, Westbrook's claim must fail. *Id.*; *Johnson,* 110 F.3d at 310 ("[t]he relevant showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation.") (quoting *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995)); *Richardson,* 841 F.2d at 120.

Westbrook's allegation that this disciplinary case was filed as the result of retaliation is conclusory and must be denied.

## V.  RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition for writ of habeas corpus under § 2254 be **DENIED**.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.

Any party may object to this Report and Recommendation. A party who objects to any part of this Report and Recommendation must file specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. The failure to file specific written objections will bar the aggrieved party from attacking on appeal the factual findings, legal conclusions, and recommendation set forth by the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds,* 28 U.S.C. § 631(b)(1) (extending the time to file objections from ten to fourteen days), *as recognized in ACS Recovery Servs., Inc. V. Griffin*, 676 F.3d 512, 521 n. 5 (5th Cir. 2012).

**SO ORDERED.**

Signed December ___, 2016.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE